UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FAYE RUSSELL,

                   Plaintiff,                          **MEMORANDUM AND ORDER**
                                                 12 CV 389 (DRH) (AKT)

              - against -

AID TO DEVELOPMENTALLY DISABLED, INC.,
DONALD REIB, Individually and as Executive
Director of Aid to Developmentally Disabled, Inc.,
STACEY RHODES, Individually and as Residential
Manager of Aid to Developmentally Disabled, Inc.,
SHIRLEY WANAT, Individually and as Program
Director for Aid to Developmentally Disabled, Inc.,
CHRISTINE NOLL, Individually and as Human
Resources Manager, Aid to Developmentally Disabled,
Inc., SALLYANN BURGESS, Individually and as
Quality Assurance Manager, Aid to Developmentally
Disabled, VICTOR TAYLOR, Individually,
GERALD HUBER, Individually, and ROBERT
LOPEZ, individually,

                   Defendants.
-----------------------------------------------------------------X
**APPEARANCES:**

**LAW OFFICE OF HARRIET A. GILLIAM**
Attorneys for Plaintiff
P.O. Box 1485
711 Union Avenue
Riverhead, New York 11901
By:    Harriet A. Gilliam, Esq.

**JACKSON LEWIS LLP**
Attorneys for Defendants Aid to Developmentally Disabled, Inc., Donald Reib, Stacey Rhodes,
Shirley Wanat, Christine Noll, and Sallyann Burgess
58 South Service Road, Suite 410
Melville, New York 11747
By:    Marc S. Wenger, Esq.
         John J. Porta, Esq.
         Kimberly N. Dobson, Esq.

**NYS OFFICE OF THE ATTORNEY GENERAL**
Attorneys for Defendants Victor Taylor, Gerald Huber, and Robert Lopez
300 Motor Parkway, Suite 205
Hauppauge, New York 11788
By:      Patricia M. Hingerton, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Faye Russell ("plaintiff") commenced this action alleging that the termination of her employment was discriminatory and retaliatory, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. §§ 1983 ("Section 1983"), 1985 ("Section 1985"), and 1986 ("Section 1986"), and the New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL").  Presently before the Court are: (1) a motion seeking dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) by defendants Aid to Developmentally Disabled, Inc. ("ADD"), Donald Reib ("Reib"), Stacey Rhodes ("Rhodes"),[1] Shirley Wanat ("Wanat"), Christine Noll ("Noll") and Sallyann Burgess ("Burgess") (collectively, the "ADD Defendants"), and (2) a motion to dismiss made pursuant to Rules 12(b)(1) and 12(b)(6) by defendants Victor Taylor ("Taylor"), Gerald Huber ("Huber"), and Robert Lopez ("Lopez") (collectively, the "State Defendants").  For the reasons set forth below, the ADD Defendants' motion is granted in part and denied in part, and the State Defendants' motion is granted in its entirety.

---

[1]      Plaintiff names "Stacey Rhodes" in the caption, but uses the name "Stacey Rhode" throughout the Amended Complaint.  The ADD Defendants assert that her name is actually "Stacey Rohde."  (ADD Defs.' Mem. at 1.)  For the sake of consistency and for purposes of this Memorandum & Order, the Court will use the name in the caption, i.e., Stacey Rhodes.

# BACKGROUND

The following facts are drawn from the Amended Complaint and are presumed true for purposes of this motion.

## The Parties

Plaintiff, a female, was employed by ADD between February 2, 2009 and July 6, 2010. ADD is an "owner and operator of independent group homes for the mentally disabled" located throughout Suffolk County, New York.  (Am. Compl. ¶ 8.)  At all relevant times, plaintiff was employed at ADD's Northville location.

Reib was the Executive Director of ADD and was "responsible for [ADD's] overall administrative operations."  (*Id.* ¶ 16.)  Rhodes was the Residential Director at the Northville location and was plaintiff's immediate supervisor throughout the relevant time period.  Noll was ADD's Human Resources Manger and "had primary responsibility for personnel matters."  (*Id.* ¶ 19.)  Burgess was ADD's Quality Assurance Manager and "was responsible for ensuring that residents received quality care in compliance with State law and regulations and . . . for addressing all allegations of incidents of abuse or neglect."  (*Id.* ¶ 20.)  Wanat was ADD's Program Director and "QMRP."[2]  (*Id.* ¶ 18.)

Plaintiff asserts that pursuant to New York's Mental Hygiene Law, the New York State Office of People with Developmental Disabilities ("OPWDD") "sets standard for and examines and inspects the group homes operated by" ADD.  (*Id.* ¶ 10.)  The Long Island Developmental Disabilities Services Office ("LI DDSO") is a regional office of the OPWDD, and "is responsible

---

[2]      The Amended Complaint does not define what "QMRP" refers to and does not provide a description of Wanat's job duties.

at the regional level for monitoring and reviewing the activities of ADD." (*Id.* ¶ 11.)  Huber was the Director of the LI DDSO and Lopez was the Assistant Director of the LI DDSO.  Taylor was a New York State employee "assigned to investigate allegations of abuse and neglect." (*Id.* ¶ 21.)  It is unclear from the Amended Complaint whether Taylor worked to the LI DDSO with Huber and Lopez.[3]

***Plaintiff's Work Schedule***

Plaintiff began working at ADD as a cook on February 2, 2009, and worked "full time," i.e., "from 12 noon to 8:00 p.m., Monday through Friday." (*Id.* ¶ 28.)  In May 2009, plaintiff requested permission from Rhodes to work a "flexible work schedule" in order to care for her three young grandchildren. (*Id.* ¶¶ 30, 31.)  Rhodes approved plaintiff's request and, between August 2009 and March 2010, plaintiff worked "a full time flex schedule." (*Id.* ¶¶ 34, 35.)  Plaintiff alleges that for several months during her time on the "flex schedule," she "actually work[ed] in excess of her regular hours" and accrued "substantial overtime." (*Id.* ¶ 35.)

In March 2010, at plaintiff's request, Rhodes assigned plaintiff to a "temporary part time opening" to fill the position of a "direct care worker" who was out on a leave. (*Id.* ¶¶ 36, 37.)  In that position, plaintiff worked Saturdays from 9:00 am to 9:00 pm, Sundays from 9:00 am to 3:00 pm, and "additional hours" on Fridays from 7:00 am to 3:00 pm. (*Id.* ¶ 38.)  Plaintiff remained in this position and worked these hours until May 2010, when the original employee returned from his leave.

In May 2010, plaintiff began working "a part-time shift as a direct care aide" on Fridays

---

[3]        In their memorandum in support of their motion to dismiss, the State Defendants assert that Taylor was "a Facility Review Specialist II of the New York State Commission on Quality Care & Advocacy for Persons with Disabilities." (State Defs.' Mem. at 1.)

and Saturdays from 11:00 pm to 7:00 am.  Plaintiff remained in this position until her

termination on July 6, 2010.

**_Plaintiff's Complaints of Discrimination_**

      Plaintiff alleges that throughout her employment at ADD she "noticed . . . a pattern and

practice of disparate and discriminatory treatment of female employees in comparison to male

employees with respect to working conditions, assignments, scheduling and disciplinary actions."

(*Id.* ¶ 50.)  According to plaintiff, Rhodes "was known to have an affinity towards males" and

showed "more favorable treatment of male employees over female employees who were under

her supervision in terms of working conditions, disciplinary actions and scheduling."  (*Id.* ¶ 51.)

Plaintiff asserts that Rhodes acknowledged during conversation with her "that there were male

employees who should have been disciplined, but they were not."  (*Id.* ¶ 78.)  Plaintiff alleges

that she complained about Rhodes's "differential treatment of females" to both Rhodes and Noll,

but no action was taken.  (*Id.* ¶ 52.)

**_Plaintiff's Complaints About the Conditions at ADD_**

      In late Fall 2009, plaintiff made several complaints to Rhodes, Burgess, and Wanat

regarding "abuse of residents at the Defendant's Northville facility which she had observed

firsthand or had learned of from the residents."  (*Id.* ¶ 45.)  For example, plaintiff alleges that she

complained to Rhodes regarding: (1) "the lack of care, protection and services" being provided to

ADD residents at the Northville location; (2) her observation of a "coworker physically abus[ing]

a resident by slamming him against the wall"; (3) her observation of a "resident crying out in

pain after a fall in the shower at a day treatment facility"; (4) Rhodes's own refusal of plaintiff's

request to take a resident to the hospital; and (5) the "sexual abuse of a resident by his

roommate" and the staff's insensitive response.  (*Id.* ¶ 46.)  Plaintiff also alleges that in January

2010 she gave Burgess a written statement "regarding a resident being physically abused and

neglected."  (*Id.*)  According to plaintiff, Burgess tore up the statement and directed plaintiff "to

write another statement that omitted some of the details of the allegations."  (*Id.*)  Neither Rhodes

nor Burgess ever followed up on plaintiff's complaints.  In fact, according to plaintiff, during a

"mandatory [staff] meeting," Burgess and Wanat directed plaintiff and other staff members "not

to raise any of the abuses of residents which [plaintiff] had observed" and "not to record any

incidents of abuse or neglect of residents."  (*Id.*)

On July 1 and 2, 2010, plaintiff "began contacting [ ] various outside agencies to

complain about the abuse, neglect and death of a resident from the Northville residence" as well

as "the sexual abuse of a Northville resident and various unsanitary conditions at the Northville

residence."  (*Id.* ¶ 48.)  Although plaintiff does not specifically identify the "various outside

agencies" she contacted, her pleading implies that she contacted the New York state agency that

employed Taylor.  (*See id.*)  Plaintiff alleges that "Taylor never addressed Plaintiff's complaint

until August 18 and 19, 2010, nearly 6 weeks after Plaintiff's complaints and her termination."

(*Id.*)

### *The Alleged Retaliation Against Plaintiff*

> ### 1.  <u>The Written Reprimand</u>

Plaintiff alleges that she provided Noll with a written statement of her complaints

regarding the treatment of residents at the Northville facility.  (*Id.* ¶ 53.)  "[S]hortly [there]after,"

in January 2010, Noll gave plaintiff "a first and final written reprimand regarding her

attendance."  (*Id.* ¶ 53.)  The written reprimand was signed by Noll and Wanat.  Noll told

plaintiff that she had "been randomly selected for a check with her attendance records," but plaintiff doubted that this was a random check given the short time period that had elapsed since she gave Noll the written complaint.  (*Id.* ¶¶ 54, 55.)  Plaintiff also disputed Noll's "accusations and assessment of her attendance record," because as of that time plaintiff was not only adhering to her "approved flex schedule" but she was also working "excess hours to earn overtime."  (*Id.* ¶ 56.)

Plaintiff asserts that this written reprimand was the first and only "negative personnel action" issued against her during her employment at ADD.  (*Id.* ¶ 58.)  Plaintiff also alleges that other employees with "attendance issues" were never subjected to "'random review' of their attendance records" or "negative personnel action."  (*Id.* ¶ 57.)

### 2.   Plaintiff's Suspension

Plaintiff alleges on July 2, 2010, the second day on which she made telephone calls to "outside agencies" regarding the treatment of ADD's Northville residents, plaintiff was advised by her daughter that Noll had been trying to contact plaintiff.  (*Id.* ¶ 59.)  In response, plaintiff placed a telephone call to Noll at approximately 8:44 am on July 2, 2010.  During the telephone conversation that ensued, Noll advised plaintiff that "she was suspended and that she was not to report to work for her regular shift that night at 11:00 pm."  (*Id.* ¶ 63.)  When plaintiff inquired as to the reason for the suspension, Noll "responded that she could not discuss the matter, but directed Plaintiff to call her on July 6, 2010."  (*Id.* ¶ 64.)  When plaintiff called on July 6, 2010, she spoke with Noll's secretary and then left a voice message for Noll.  Plaintiff never received a call back from Noll.

On July 2, 2010, the date of her suspension, plaintiff had been scheduled to work the

11:00 pm to 7:00 am shift, and so she was not due in to work until 11:00 pm.  According to plaintiff, Noll and Rhodes "had generated an inaccurate and false schedule" that showed plaintiff working "7-12 noon" on July 2, 2010, and "used this false schedule to support [a] false claim that Plaintiff had failed to report to work on July 2, 2010."  (*Id.* ¶ 62.)  This was, apparently, the basis for plaintiff's suspension.  (*Id.* ¶ 64.)

### 3.    <u>Plaintiff's Termination</u>

Thereafter, Noll issued plaintiff a notice of termination dated July 6, 2010.  Plaintiff alleges that her termination was based upon a number of "false accusation[s]."  (*Id.* ¶ 68.)  Specifically, she was terminated for "engag[ing] in gossip in the workplace, in violation of [ADD's] Code of Conduct," and for making "false accusations concerning staff's treatment of residents at the Northville facility."  (*Id.*)  Her termination was also based upon her allegedly "poor attendance record," although plaintiff notes that she had "never been counseled or disciplined regarding her attendance" and that she had "earned significant overtime and received several bonuses or 'enhancement pay.'" (*Id.* ¶ 69.)

Plaintiff alleges that in order to provide a basis for her termination, Rhodes "prepared undated, unsigned and unsworn summary statements from Plaintiff's coworkers alleging that Plaintiff had made false accusations and allegations about [ADD] staff and the treatment of residents at the Northville facility."  (*Id.* ¶ 70.)  Although plaintiff was never confronted with these alleged statements, Noll relied upon them in making the decision to terminate plaintiff.  (*Id.* ¶¶ 71, 72.)  In addition, plaintiff alleges that Rhodes and Noll made "misrepresentations regarding Plaintiff's attendance and work schedule [and falsely] alleged that Plaintiff failed to attend [an] in service training."  (*Id.* ¶ 73.)

Finally, the July 6, 2010 termination notice referenced plaintiff's failure to report for work on July 2, 2010, even though Noll had suspended plaintiff and told her not to report for her 11:00 pm shift that day.  The termination notice also "falsely accused" plaintiff of insubordination for failing to report to a scheduled meeting with Noll.  (*Id.* ¶ 75.)  Plaintiff asserts that "in fact there was no scheduled meeting: [Noll] told Plaintiff to call her on July 6, 2010 and Plaintiff did so."  (*Id.* ¶ 75.)

### *Plaintiff's Complaints to the New York State Division of Human Rights*

On November 18, 2010, plaintiff filed a Verified Administrative Complaint (the "Charge") with the New York State Division of Human Rights ("SDHR"), asserting that she had been discriminated against due to her gender.  (*See* Aff'n of Marc S. Wenger, dated May 11, 2012 ("Wenger Aff'n"), Ex A (Verified Compl.) at 4 & 5.)  On that same date, the SDHR sent a copy of the Charge to the Equal Employment Opportunity Commission ("EEOC") for dual filing purposes.  (Wenger Aff'n, Ex A at unnumbered page 7.)  In an Amended Administrative Complaint (the "Amended Charge") filed with the SDHR on May 25, 2011, plaintiff amended her allegations as follows: "Retaliation because I was terminated on 6/27/10 because I reported wrong doings of handling the patients with disabilities to the State.  Then my employment was terminated."  (Wenger Aff'n, Ex. B at 1.)  Subsequently, the EEOC issued plaintiff a Right to Sue Letter, and this action was commenced thereafter.  (Am Compl. ¶ 4.)

### *The Amended Complaint*

Plaintiff's Amended Complaint sets forth nine causes of action.  In the First, Second, and Eighth Causes of Action, plaintiff alleges that the ADD Defendants discriminated against her based upon her gender and retaliated against her for complaining about such discrimination, in

9

violation of Title VII and the NYHRL.  In the Third, Fourth and Fifth Causes of Action, plaintiff asserts Section 1983 claims against all defendants, alleging that they retaliated against her for exercising her First Amendment rights, and denied "her rights as provided by the Fourteenth Amendment . . . of Equal Protection and Due Process by discriminating against [her] on account of her gender, female."  (*Id.* ¶ 100.)  In her Sixth and Seventh Causes of Action, plaintiff asserts claims against all defendants pursuant to Sections 1985 and 1986.  In her Ninth Cause of Action, plaintiff asserts a state law claim for intentional infliction of emotional distress.

## *DISCUSSION*

### I. *The State Defendants' Motion to Dismiss*

#### A. *Legal Standard*

The State Defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(1), asserting that plaintiff lacks constitutional standing to bring any claims against them.  A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011) ("A motion to dismiss for lack of subject-matter jurisdiction under [Rule] 12(b)(1) is an appropriate mechanism for challenging a plaintiff's constitutional standing to bring a particular claim.") (citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 104 (2d Cir. 2008)).  "Because standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *W.R. Huff Asset Mgmt. Co.*, 549 F.3d at 106 (internal quotation marks omitted).

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "'[A] plaintiff must demonstrate standing for each claim and form of relief sought.'" *Id.* (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)). "There are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

**B.      Plaintiff has Failed to Sufficiently Allege the Requisite Causal Connection**

Plaintiff asserts that she has "sufficiently alleged a concrete and particularized injury" to establish the first element, to wit, the termination of her employment in retaliation for her exercise of her First Amendment right to "complain to the state about an issue of public concern." (Pl.'s Opp'n to State Defs.' Mot. at 7.) Even assuming *arguendo* that this is sufficient to meet the first element, plaintiff has still failed to demonstrate standing for any of her claims against the State Defendants because she has not alleged a sufficient causal link between that injury and the State Defendants' alleged conduct.

To sufficiently plead the causation element, plaintiff must allege a causal connection "in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant." *W.R. Huff Asset Mgmt. Co.*, 549 F.3d at 106-07 (citing *Lujan*, 504 U.S. at 560-61). The Court is required to engage in a "careful judicial examination of a complaint's allegations to ascertain whether . . . the line of causation between the illegal conduct

11

and injury [is] too attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984).  As the State Defendants point out, they never employed plaintiff and did not make the decision to terminate her employment.  (State Defs.' Mem. at 9.)  Thus, the State Defendants continue, they could not possibly have caused plaintiff's injury.

To successfully plead the causation element, however, "a plaintiff need not allege that the defendant's actions were the very last step in the chain of causation to demonstrate that the defendant's actions caused the claimed injury." *Carver*, 621 F.3d at 226 (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (internal alteration and quotation marks omitted)).  "It suffices that the defendant's actions had a determinative or coercive effect upon the action of someone else who directly caused the claimed injury." *Id.* (quoting *Bennett*, 520 U.S. at 169 (internal quotation marks omitted)).  "Thus, causation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation." *Id.*

Plaintiff contends that "she was made to appear less than credible because the state defendants refused or failed to act on her complaints thereby affording [ADD] the opportunity to label her as a troublemaker and a gossiper and set[ ] the stage for her unlawful termination." (Pl.'s Opp'n to State Defs.' Mot. at 7.)  In the Amended Complaint, plaintiff alleges that she contacted "various outside agencies," presumably the agencies employing Taylor, Huber, and Lopez, on July 1 and 2, 2010 to complain about the abuse and neglect of residents at the Northville facility.  (Am. Compl. ¶ 48.)  She was suspended on July 2, 2010 (*id.* ¶64) and was terminated as of July 6, 2010 for "engag[ing] in gossip in the workplace," for making "false accusations concerning staff's treatment of residents," and based upon a "poor attendance record" (*id.* ¶¶ 68, 69).  Plaintiff alleges that the State Defendants' failure "to conduct a thorough

and timely investigation of [her] complaint" in the five day period between her first contact with them on July 1 and her termination on July 6 somehow "suggest[ed] [to her employer] that she was not credible and further [laid] the foundation for" her termination.  (*See id.* ¶ 106.)

However, the link between the State Defendants' alleged failure to immediately investigate her July 1, 2010 complaint and the ADD Defendants' decision to terminate her on July 6, 2010 is simply too attenuated to establish causation.  As an initial matter, there are no factual allegations in the Amended Complaint that suggest that anyone at ADD was aware, as of July 6, 2010, that plaintiff had complained to an outside agency.  Plaintiff does not allege that Taylor, Huber, or Lopez contacted ADD during that time period, or that ADD was otherwise notified of plaintiff's complaints.  Plaintiff also fails to allege that as of July 6, 2010 the ADD Defendants were aware of the five-day delay by the State Defendants in taking action on plaintiff's complaints.  Overall, the suggestion that the State Defendants' five-day delay in taking action on plaintiff's complaints played any role (much less a determinative role) in the ADD Defendants' decision to terminate plaintiff's employment is entirely speculative.  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976) (finding causation not established when "[s]peculative inferences are necessary to connect [the] injury to the challenged actions").  Certainly, nothing in the Amended Complaint plausibly suggests that the State Defendants had any "determinative or coercive effect" upon the ADD Defendants.  *See Bennett*, 520 U.S. at 169.

Plaintiff also brings a Section 1985 conspiracy claim against the State Defendants, asserting that they "act[ed] in concert with the [ADD] defendants to retaliate against her for making the complaint and for making it appear that there was no validity to her complaint." (Pl.'s Opp'n to State Defs.' Mot. at 8; *see also* Am. Compl. ¶ 106 (alleging that Taylor, Huber,

and Lopez "continued and perpetuated the discriminatory treatment against Plaintiff by failing to conduct a thorough and timely investigation of Plaintiff's complaint, thereby suggesting that Plaintiff was not credible and further laying the foundation for Plaintiff's summary and unlawful dismissal.").)  As discussed above, the suggestion that there was a connection between any delay on the part of the State Defendants in investigating plaintiff's July 1 and 2, 2010 complaints and plaintiff's termination is entirely speculative.  Plaintiff has failed to allege that her termination is "fairly attributable" to the conduct of the State Defendants.  *See Simon*, 426 U.S. at 44 ("[U]nadorned speculation will not suffice to invoke the federal judicial power.").

Accordingly, the Court finds that plaintiff has not demonstrated that she has standing to bring any of her claims against the State Defendants and, as such, their motion to dismiss the Amended Complaint as against them is granted.

## II.     The ADD Defendants' Motion to Dismiss

### A.     Legal Standard

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted).  Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only

14

enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement to relief.") (internal quotation marks omitted).

**B.      Plaintiff's Gender Discrimination Claims Made Pursuant to Title VII and the NYHRL**

The ADD Defendants allege that plaintiff "has not pled allegations that plausibly give rise to an 'entitlement of relief' with respect to her claims of disparate treatment sex discrimination under Title VII and the [NYHRL]." (ADD Defs.' Mem. at 4.)  Title VII prohibits an employer from discriminating against any employee or applicant for employment "because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(2); *see also* N.Y. Exec. Law § 296(1)(a) (making it an "unlawful discriminatory practice" for an employer to discriminate based on an employee's sex).  Under Title VII and the NYHRL,[4] in order to establish a prima facie case of sex discrimination, plaintiff must establish that she: (1) is a member of a protected class; (2) was qualified for the position she held; and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000).

**1.      Pleading Standard**

At the pleading stage, a plaintiff is "not require[d] [ ] to plead facts sufficient to establish a prima facie disparate treatment claim."  *Boykin v. Keycorp*, 521 F.3d 202, 212 (2d Cir. 2008)

---

[4]      Claims brought under Title VII and the NYHRL are subject to the same analytical standards.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000).

(citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)).[5]  Rather, "the ordinary rules

for assessing the sufficiency of a complaint apply."  *Swierkiewicz*, 534 U.S. at 511.  In

*Swierkiewicz*, the Supreme Court held that a discrimination complaint "easily satisfie[d] the

requirements of Rule 8(a) because it [gave] respondent fair notice of the basis for petitioner's

claims" by "alleg[ing] that he had been terminated on account of his national origin[,] . . .

detail[ing] the events leading to his termination, provid[ing] relevant dates, and includ[ing] the

ages and nationalities of at least some of the relevant persons involved with his termination."  *Id.*

at 514.  This remains the proper pleading standard in the Second Circuit for Title VII claims,

even after the Supreme Court's decision in *Twombly* and *Iqbal*.  *See Boykin*, 521 F.3d at 213

(noting that the Supreme Court's decision in *Twombly* "affirmed the vitality of *Swierkiewicz*")

(citing *Twombly*, 550 U.S. at 569-70); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-

21 (2d Cir. 2010) (noting that *Iqbal* "reiterated much of the discussion in *Twombly* and rejected

as insufficient a pleading that the *Iqbal* Court regarded as entirely conclusory," and "reject[ing]

[the defendant's] contention that *Twombly* and *Iqbal* require the pleading of specific evidence of

extra facts beyond what is needed to make the claim plausible").[6]  "Thus, to survive a Rule

---

[5]      The Circuit has explained that a plaintiff is not required to plead "specific facts
establishing a prima facie case of discrimination" because that standard, articulated in *McDonnell
Douglas Corp. v. Green*, 411 U.S. 792 (1973), "is an evidentiary standard, not a pleading
requirement, and that to require more than Rule 8(a)'s 'simplified notice pleading standard'
would unjustifiedly impose a heightened pleading requirement on the plaintiff."  *Boykin*, 521
F.3d at 212 (quoting *Swierkiewicz*, 534 U.S. at 508, 510, 512-13 (internal quotation marks
omitted)).

[6]      *But see Schwab v. Smalls*, 435 Fed. Appx. 37, 40 (2d Cir. July 27, 2011)
(unpublished) (noting that "[q]uestions have been raised . . . as to *Swierkiewicz*'s continued
viability in light of *Twombly* and *Iqbal*," but declining to address the question because the
complaint "alleges facts sufficient to state a claim of employment discrimination . . . under both
the *Swierkiewicz* standard and the more demanding *McDonnell Douglas*-based approach adopted

12(b)(6) motion, plaintiff need not establish a *prima facie* case of discrimination, but her complaint must give fair notice of her claims, and those claims must be facially plausible." *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 440 (E.D.N.Y. 2010); *see also Hedges v. Town of Madison*, 456 Fed. Appx. 22, 23 (2d Cir. 2012) (unpublished) ("[A]t a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a prima facie case is not required.").

**2.    Plaintiff's Title VII Claims Against the Individual ADD Defendants are Dismissed**

The ADD Defendants assert, and plaintiff does not dispute, that "[t]o the extent Plaintiff is claiming that the individual ADD Defendants are liable under Title VII, such claims must be dismissed as a matter of law." (ADD Defs.' Mem. at 22.) The Second Circuit has made clear that individuals are not subject to liability under Title VII. *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995). Thus, plaintiff's Title VII claims (for both discrimination and retaliation) against Reib, Rhodes, Wanat, Noll, and Burgess are dismissed.

**3.    The Motion to Dismiss Plaintiff's Title VII Gender Discrimination Claims Against ADD is Denied**

The ADD Defendants assert that plaintiff's Title VII gender discrimination claims should be dismissed because her "allegations of sex-based differential treatment are speculative and conclusory." (ADD Defs.' Mem. at 5.) Plaintiff has alleged that "[d]uring the course of her employment," she "experienced differential treatment than similarly situated male employees with respect to her terms and conditions of employment and unwarranted disciplinary actions."

---

by the district court") (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)).

(Am. Compl. ¶ 76.)  Specifically, plaintiff alleges that she received a written reprimand and was suspended for poor attendance but that this discipline was unwarranted (*id.* ¶¶ 56, 62, 69), and she further alleges that "other employees who had attendance issues [were not] subjected to negative personnel action" (*id.* ¶ 57).  Plaintiff alleges that Rhodes "demonstrated" an "affinity towards males" by affording "more favorable treatment of male employees over female employees who were under her supervision in terms of working conditions[ and] disciplinary actions."  (*Id.* ¶ 51.)  Rhodes allegedly acknowledged to plaintiff "that there were male employees who should have been disciplined, but [ ] were not."  (*Id.* ¶ 78.)  Finally, plaintiff alleges that Rhodes and Noll knowingly proffered a false basis for her termination (i.e., that plaintiff had a "poor attendance record"), and that Rhodes prepared "false and unsubstantiated and unsigned" statements – purportedly made by plaintiff's co-workers – that were used to support her termination.  (*Id.* ¶¶ 68-75.)

"As the Supreme Court's decision in *Swierkiewicz* indicates, at this stage, the proper inquiry is not whether the plaintiff has adduced sufficient evidence to prevail ultimately at trial, but rather whether she is entitled to offer evidence to support her claims."  *Wilson v. Family Dollar Stores*, 2007 WL 952066, at *8 (E.D.N.Y. Mar. 29, 2007) (citing *Swierkiewicz*, 534 U.S. at 511, 515).  Viewing plaintiff's allegations collectively, the Court finds them sufficient to withstand a Rule 12(b)(6) motion to dismiss.  *See McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 839 F. Supp. 2d 562, 569 (E.D.N.Y. 2012) (denying a motion to dismiss when plaintiff alleged that "[u]nlike his [similarly situated] white co-workers, the Plaintiff was terminated and the reasons given for this adverse employment action were allegedly false").

The ADD Defendants assert that plaintiff has proffered only "generalized and conclusory" allegations regarding differential treatment" that are "insufficient" to survive a Rule 12(b)(6) motion.  (*See* ADD Defs.' Mem. at 6.)  To the contrary, however, plaintiff has alleged that Rhodes and Noll disciplined her for poor attendance when, in fact, she adhered to her assigned schedule and actually earned overtime compensation; that other male employees under Rhodes's supervision were not disciplined for actual attendance deficiencies; that Rhodes acknowledged that she had not disciplined male employees under her supervision when she should have; and that the reasons proffered in support of plaintiff's termination were false, unsubstantiated, and based on misrepresentations made by Rhodes and Noll.  While certainly not extensive, these allegations are sufficient to satisfy the "fair notice" pleading standard articulated by the Supreme Court in *Swierkiewicz*.  Moreover, the factual allegations in the Amended Complaint are far more substantive and specific than the allegations made in the cases cited by the ADD Defendants. (*See* ADD Defs.' Mem. at 7 (citing *Perry v. State of N.Y. Dep't of Labor*, 2009 WL 2575713, at *3 (S.D.N.Y. Aug. 20, 2009) (plaintiff's allegations that he "was denied an interview based upon discriminatory bias" and that "the [DOL] discriminated against [him]," standing alone, "constitute[d] the type of 'labels and conclusions' or the 'formulaic recitation of the elements of a cause of action' deemed by *Twombly* as insufficient to state a claim for relief"); *Smith v. St. Luke's Roosevelt Hosp.*, 2009 U.S. Dist. LEXIS 69995, at **60-61 (S.D.N.Y. Aug. 11, 2009) (dismissing race discrimination claim when plaintiff failed to allege "even one fact that connects his race to his termination"); *Rissman v. Chertoff*, 2008 U.S. Dist. LEXIS 101514, at **8-9 (S.D.N.Y. Dec. 12, 2008) ("In essence, plaintiff alleges that because he was yelled at, this must

20

have been because he was 'an effeminate, gay, Jewish older white male.'  Such conclusory and

speculative statements are insufficient.").)

      The ADD Defendants also assert that plaintiff's gender discrimination claims are

inadequately pled because she has "fail[ed] to identify any similarly situated male employees

who were treated differently."  (ADD Defs.' Mem. at 7-8.)  In particular, the ADD Defendants

argue that plaintiff "does not refer to any specific acts of misconduct committed by a male

employee who was not disciplined by Rhode[s] . . . ."  (*Id.* at 7.)  The ADD Defendants have not,

however, cited any applicable case law that would suggest that such allegations are required in

order to avoid dismissal at this stage of the proceedings.  *See Peterson v. Long Island R.R. Co.*,

2010 WL 2671717, at *4 (E.D.N.Y. June 30, 2010) (expressly rejecting the defendant's

contention that "in order to survive a motion to dismiss [the plaintiff] is required to plead

'comparators,' that is, specific instances where white employees were punished less severely for

substantially similar conduct").  Indeed, the decisions relied upon by the ADD Defendants for the

proposition that "[p]laintiff's failure to identify any similarly situated male employees treated

more favorably than she was is fatal to her claim" were rendered at the summary judgment stage

– not on a Rule 12(b)(6) motion to dismiss.  (*See* ADD Defs.' Mem. at 8 (citing *Shumway v.

United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (discussing plaintiff's burden to defeat

a summary judgment motion); *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 2005 U.S. Dist.

LEXIS 75, at *286 (S.D.N.Y. Jan. 5, 2005) (granting summary judgment when plaintiffs "failed

to show that any 'similarly situated non-minority individuals were treated differently'" despite

having had a "full opportunity, during extensive discovery, to develop evidence").)

*Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010), also cited by the ADD Defendants on this point (ADD Defs.' Reply at 2), is inapposite to the present case.  There, the Circuit found the plaintiffs' failure to allege "specific examples" of similarly situated persons receiving differential treatment from the defendant town was fatal to their "class of one" equal protection claim.  *Ruston*, 610 F.3d at 59.  Such a claim can be successful only when a "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 58.  Thus, when the plaintiffs' complaint did not include specific factual allegations going to this element of their class of one claim, they had "fail[ed] to allege facts that 'plausibly suggest an entitlement to relief.'" *Id.* at 59.  By contrast, in the Title VII context the "comparator test" is just one method by which a plaintiff "can establish an inference of discrimination."  *McDowell*, 839 F. Supp. 2d at 568.  "With respect to a comparator analysis, all that a plaintiff is required to allege [with some factual support], at the pleadings stage, is that . . . he was punished more severely than those outside of his [protected] class who were similarly situated in all material respects." *Id.* at 569.  By alleging that she was punished by Rhodes and Noll more severely than her male counterparts for similar alleged attendance problems, plaintiff has met this standard.  *See id.*

Accordingly, the ADD Defendants' motion to dismiss plaintiff's Title VII gender discrimination claims against ADD is denied.

### 4.    Plaintiff's NYHRL Gender Discrimination Claims are Dismissed

The NYHRL prohibits "an employer" from engaging in discrimination based upon, *inter alia*, gender.  N.Y. Exec. Law § 296(1)(a).  Additionally, the NYHRL makes it unlawful for "any

person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."  N.Y. Exec. Law § 296(6).  Although neither party has addressed the issue, the Court must determine as a threshold matter whether plaintiff's NYHRL gender discrimination claims are barred and subject to dismissal for lack of subject matter jurisdiction pursuant to the NYHRL's election of remedies doctrine.  Section 297(9) of the NYHRL provides:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, . . . *unless such person had filed a complaint hereunder or with any local commission on human rights*, . . . provided that, where the [SDHR] has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9) (emphasis added).  The application of the NYHRL's election of remedies provision would divest this Court of jurisdiction over plaintiff's NYHRL claims.  *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74 n.3 (2d Cir. 2010) (quoting *Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 884 (2d Cir. 1995)).  The question whether the Court lacks subject matter jurisdiction over plaintiff's NYHRL claims is therefore properly analyzed pursuant to Rule 12(b)(1).  *See MacEntee v. IBM*, 783 F. Supp. 2d 434, 447 (S.D.N.Y. 2011).  The Court may resolve a Rule 12(b)(1) motion by "refer[ring] to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

Under the NYHRL election of remedies rule, "a claim 'once brought before the [SDHR], may not be brought again as a plenary action in another court.'" *MacEntee*, 783 F. Supp. 2d at 447 (quoting *York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002)) (alteration added). After the SDHR renders a decision on a charge of discrimination, a plaintiff's only recourse is to "appeal that decision to the Supreme Court of the State of New York." *Ganthier v. N. Shore-Long Island Jewish Health Sys., Inc.*, 345 F. Supp. 2d 271, 282 (E.D.N.Y. 2004) (citing N.Y. Exec. Law § 298). The statute provides an exception to the election of remedies rule when the charge filed with the SDHR is dismissed for administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled." *See* N.Y. Exec. Law § 297(9).

Here, the Charge filed by plaintiff with the SDHR set forth the same gender discrimination claims that she now asserts in the Amended Complaint. (*See* Defs.' Ex. B.) The Court finds that there is "sufficient identity of issue" between the Charge and the Amended Complaint such that the election of remedies provision "bars the action in court." *See Benson v. N. Shore-Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320, 326 (E.D.N.Y. Apr. 4, 2007) (internal quotation marks and citation omitted). The record contains no indication that any of the exceptions to the election of remedies provision (i.e., that the SDHR dismissed the Charge on the grounds of administrative convenience, untimeliness, or annulment of the election of remedies) apply.[7]

_____

[7]        The fact that the EEOC issued a Right to Sue Letter "has nothing to do with the [NYHRL's] election-of-remedies provision." *Brown v. N.Y. State Dep't of Corr. Servs.*, 583 F. Supp. 2d 404, 414-15 (W.D.N.Y. 2008).

24

Finally, although the Charge listed only ADD as a respondent and did not include any of the other individual ADD Defendants named in this action, the Court nevertheless lacks jurisdiction over plaintiff's NYHRL gender discrimination claims against every ADD Defendant, because those claims "are based on the same facts and incidents raised in the [C]harge." *Benson*, 482 F. Supp. 2d at 326 ("[E]ven though the complaint names additional parties, because the incidents are identical, this Court lacks jurisdiction over the Plaintiff's NYSHRL claims against all the Defendants."); *see also El Sayed v. Hilton Hotels Corp.*, 2008 WL 3362828, at *5 (S.D.N.Y. Aug. 7, 2008) ("Because the present claims against [defendants not named in the administrative complaint] are based on the same facts as the administrative complaint filed with the Division, El Sayed is barred from commencing an action against the additional defendants in this Court."); *Lyman v. City of New York*, 1997 WL 473976, at *4 (S.D.N.Y. Aug. 20, 1997) ("The facts that [defendant] Mazar was not named in the [administrative] complaint and that the complaint before this Court includes factual allegations not included in the [administrative] complaint do not change this result, because the present claims are based on the same facts as the claims raised in the [administrative] complaint.").

Accordingly, the Court lacks jurisdiction over plaintiff's NYHRL gender discrimination claims against the ADD Defendants, and those claims are dismissed.

**C.    *Plaintiff's Retaliation Claims Made Pursuant to Title VII and the NYHRL***

### 1.    Plaintiff's Title VII Retaliation Claims are Dismissed

The ADD Defendants assert that plaintiff "has failed to exhaust her administrative remedies" as to her Title VII claim that she was disciplined and terminated in retaliation for her complaints of sex discrimination.  (ADD Defs.' Mem. at 9.)  Plaintiff does not dispute the ADD

25

Defendants' assertion that "[n]o such claim for retaliation ever was included in her administrative complaints – complaints which she filed well after the alleged retaliatory acts had occurred." (*See id.*)

Plaintiff asserted in the Charge that she had been discriminated against on the basis of her gender as follows: "Puching (sic) the males in and out[, and] letting them get away with no call no show.  I never did but I lost my job. [A]llowing them to do less work.  Much more." (*See* Wenger Aff'n, Ex A at 5, 7.)[8]  In the Charge, plaintiff only checked the box indicating she was discriminated against based on her gender, and did not check the box for "Retaliation." (*See id.* at 4.)  In the questionnaire plaintiff completed in connection with the Charge (the "Questionnaire"), plaintiff stated that she made a complaint in November 2009 to "[H]uman Resources Salley Qollity (sic) Insorance (sic)."[9]  (Reply Aff'n of Marc S. Wenger, dated July 30, 2012 ("Wenger Reply Aff'n"), Ex. E at 11.)  Plaintiff indicated in the Questionnaire that after she lodged this complaint – the nature of which is not specified in the Charge – she was told that she "was out to (sic) much[,] mean while (sic) every male who works there [is] alway[s] out and still got paid." (*Id.* at 12.)  After the Charge was filed, plaintiff submitted the Amended Charge, which included the additional allegation that she was terminated because she reported "wrong doings of handling the patients with disabilities to the State." (Wenger Aff'n, Ex. B at 1.)

---

[8]     It is appropriate for the Court to consider SDHR filings in the context of a Rule 12(b)(6) motion because they are public documents filed in the context of administrative agency proceedings, and because they are integral to plaintiff's claims.  *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006); *Musaji v. Banco do Brasil*, 2011 WL 2507712, at *4 n.4 (S.D.N.Y. June 21, 2011); *Morris*, 680 F. Supp. 2d at 435-36.

[9]     In her opposition papers, plaintiff asserts that this should have read "Sally the Quality Assurance person," (Pl.'s ADD Opp'n at 14), which the Court presumes would refer to defendant Sallyann Burgess, Quality Assurance Manager.

While "[e]xhaustion is ordinarily an essential element of a Title VII claim," any claims that are "not raised in an [administrative agency] complaint . . . may be brought in federal court if they are reasonably related to the claim filed with the agency." *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks omitted).  The Second Circuit has recognized three situations in which claims raised for the first time in a federal lawsuit would be considered "reasonably related" to those contained in an administrative charge: "1) where the conduct complained of would fall within the scope of the [agency] investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing [a] charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the [ ] charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks omitted).

Plaintiff does not dispute that the Charge does not explicitly set forth a claim for retaliation based on her complaints of gender discrimination.  She asserts, however, that such retaliation claims are reasonably related to the allegations in her Charge and Amended Charge because such claims "can reasonably be expected to grow out of the charge of discrimination." (Pl.'s ADD Opp'n at 13.)  This exception, which has been described by the Second Circuit as "essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [to be] suffering." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks omitted).  A plaintiff's "failure to check the 'retaliation' box is not dispositive." *Morris*, 680 F. Supp. 2d at

27

439.  Instead, "when an [administrative] charge alleges facts from which a reader can infer a link between protected activity – for example, a complaint about perceived discriminatory treatment – and a subsequent adverse employment action, a retaliation claim asserted in a subsequent lawsuit will be 'reasonably related' to the [ ] Charge."  *Id.* at 438.

According to plaintiff, the investigating agency "could reasonably infer from plaintiff's administrative complaints that she had complained about discriminatory treatment on account of her gender and that she had also complained about the mental and physical abuse of the mentally disabled at the Northville facility and that her termination was in retaliation for her protected activity."  (Pl.'s ADD Opp'n at 14.)  Nothing in the Charge or Amended Charge, however, explicitly states or even suggests that plaintiff ever actually complained about gender discrimination.  As plaintiff points out, the Questionnaire reflects that she made some undefined complaint in November 2009 to Sally the Quality Assurance person.[10]  However, "'it is the charge rather than the questionnaire that matters'" to the reasonably related analysis.  *Sussle v. Sirina Protection Sys. Corp.*, 269 F. Supp. 2d 285, 315 (S.D.N.Y. 2003) (quoting *Novitsky v. Am. Consulting Engineers, LLC*, 196 F.3d 699, 702 (7th Cir. 1999)).  "'Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation.'" *Id.* (quoting *Novitsky*, 196 F.3d at 702).  "Hence, courts will not consider claims presented in such a questionnaire in determining the scope of an EEOC charge when the plaintiff signed and submitted an actual charge."  *Id.*; *see also Fleming v. Verizon New York, Inc.*, 419 F. Supp. 2d

---

[10]     Interestingly, in her opposition papers, plaintiff asserts that "[i]t can reasonably be inferred . . . that plaintiff was complaining about issues pertinent to the area of Sally's responsibility, namely, the treatment of the mentally disabled residents at the Northville facility" – not about gender discrimination.  (Pl.'s ADD Opp'n at 14.)

455, 463 (S.D.N.Y. 2005) ("Any claims not included in the final EEOC Charge itself could not be exhausted at the administrative level.").

Moreover, plaintiff's assertion in the Amended Charge that she was terminated for her complaints about the care of Northville residents would not have put the investigating administrative agency on notice that she was also alleging retaliation for her complaints about gender discrimination.  In other words, the scope of an investigation into her assertion that she was terminated after she complained about resident care could not reasonably be expected to include an investigation as to whether plaintiff was terminated for her complaints about gender discrimination.

Finally, the Court notes that plaintiff's claim that she was terminated in retaliation for her complaints to outside agencies regarding the care and treatment of Northville residents is not cognizable under Title VII.  "Title VII's antiretaliation provision prohibits an employer from discriminating against an employee for opposing any practice made unlawful by Title VII." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 698 (2d Cir. 2012) (citing *Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53, 59-60 (2006)); *see also* 42 U.S.C. § 2000e-3(a).  Thus, to engage in protected activity under Title VII, a plaintiff must "challenge[ ] employment practices that, if proven, were unlawful under Title VII."  *Kessler v. Westchester Cnty. Dep't of Soc. Serv.*, 461 F.3d 199, 210 (2d Cir. 2006).  As noted above, Title VII prohibits an employer from discriminating against any employee or applicant for employment "because of such individual's . . . race, color, religion, sex or national origin . . . ."  42 U.S.C. § 2000e-2(a)(2).  The alleged mistreatment and abuse of residents at the Northville facility is not an "unlawful employment practice" prohibited by Title VII.  Accordingly, plaintiff's claim that she

was terminated in retaliation for her complaints about such conduct – whether raised at the

administrative level or not – is not cognizable under Title VII.[11]  *See Hall v. New York Hosp.*,

117 Fed. Appx. 790, 792 (2d Cir. Nov. 23, 2004) (unpublished) ("The allegedly discriminatory

medical treatment given to certain of the Hospital's patients, which Hall allegedly opposed, is not

an unlawful 'employment practice' protected by Title VII.") (citing *Wimmer v. Suffolk Cnty.

Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (finding that plaintiff could not maintain a Title

VII retaliation claim when asserted protected activity consisted of complaints "that certain

members of the Department had acted in a discriminatory manner toward the public")).

Thus, the ADD Defendant's motion to dismiss plaintiff's Title VII retaliation claims is

granted.

### 2.   <u>Plaintiff's NYHRL Retaliation Claims</u>

*a.   Plaintiff's NYHRL Retaliation Claims Against ADD*

Plaintiff also asserts retaliation claims pursuant to the NYHRL.[12]  Section 296(1)(e) of the

NYHRL provides that "[i]t shall be an unlawful discriminatory practice for an employer . . . to

discharge, expel or otherwise discriminate against a person because he has opposed any practices

forbidden under this article . . . ."  N.Y. Exec. Law § 296(1)(e); *see also* N.Y. Exec. Law §

296(7) (prohibiting "any person engaged in any activity to which this section applies [from]

---

[11]    Such allegations could, however, support a claim under New York Labor Law
§ 740.  As is discussed later in the text, plaintiff will be given an opportunity to move to amend
her pleading.

[12]    The NYHRL election of remedies provision, described earlier in the text, does not
bar plaintiff's NYHRL retaliation claim because, as set forth above, no claim of retaliation based
on complaints of gender discrimination was made in (or can be inferred from the allegations in)
the Charge or Amended Charge.

retaliat[ing] or discriminat[ing] against any person because he or she has opposed any practices forbidden under this article . . . .").

"NYHRL retaliation claims are subject to the same analysis as retaliation claims under Title VII." *Deshpande v. Medisys Health Network, Inc.*, 2010 WL 1539745, at *21 (E.D.N.Y. Apr. 16, 2010) (citing *Ludwig v. Rochester Psychiatric Ctr.*, 347 Fed. Appx. 685, 686 n.1 (2d Cir. 2009)). To successfully state a claim for retaliation, "a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007). "A plaintiff may assert [a] causal connection through allegations of retaliatory animus, or else by circumstantial evidence, such as close temporal proximity between the protected activity and the retaliatory action." *Perry*, 2009 WL 2575713 at *6.

Here, plaintiff alleges that she "made complaints to Defendants Rhode[s] and Noll about the differential treatment of females, to no avail," (Am Compl. ¶ 52), and that "[s]hortly after [she] complained about discriminatory treatment in the workplace, she was subjected to unwarranted negative personnel action in the form of a first and final written warning, suspension and ultimately termination by ADD, Inc" (*id.* ¶ 88.) Though, admittedly, these allegations are not extensive or detailed, the Court finds them sufficient to provide ADD with notice of the contours of plaintiff's retaliation claim. Accordingly, the ADD Defendants' motion to dismiss plaintiff's claim against ADD that she was disciplined and terminated in retaliation for complaining about gender discrimination is denied.

31

Plaintiff also alleges that she was disciplined and terminated in retaliation for her complaints regarding the treatment and care of Northville residents.  (*See id.* ¶¶ 86,88.)  This is not a cognizable claim under the NYHRL.  "In order to assert a viable claim of retaliatory discharge [under the NYHRL], an employee must demonstrate that there was a reasonable basis to believe that his or her employer engaged in an actionable discriminatory practice and that the employer discharged the employee as a result of the employee's opposition to that practice." *McKenzie v. Meridian Cap. Grp.*, 829 N.Y.S.2d 129, 131 (2d Dep't 2006).  Plaintiff has failed to show that her complaints about the alleged mistreatment of Northville residents constituted an unlawful discriminatory practice prohibited by the NYHRL and, as such, she has failed to demonstrate an essential element of her NYHRL retaliation claim.  *See McKenzie*, 829 N.Y.S.2d at 131 (dismissing retaliatory discharge claim when plaintiff failed to allege that she opposed "a practice forbidden by" the NYHRL).  Thus, to the extent plaintiff's NYHRL retaliation claim is based upon any discipline or termination allegedly stemming from her complaints regarding Northville resident care, such claim is dismissed.

        b.    *Plaintiff's NYHRL Retaliation Claims Against the Individual ADD Defendants*

The NYHRL prohibits "an employer" from engaging in unlawful retaliation.  N.Y. Exec. Law § 296(1)(e).  Individuals are liable as employers under Section 296(1) only if they have "an ownership interest," or if they "themselves, have the authority to 'hire and fire' employees." *Gentile v. Town of Huntington*, 288 F. Supp. 2d 316, 321 (E.D.N.Y. 2003) (quoting *Tomka*, 66 F.3d at 1317); *see also Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984) (per curium) (holding that an individual is not liable under the NYHRL as an employer unless he is "shown to

have any ownership interest or any power to do more than carry out personnel decisions made by others"). Here, plaintiff has not alleged that any of the individual ADD defendants had an ownership interest in ADD. Plaintiff asserts that "Reib and Wanat were managerial employees who had authority over her employment situation" (Pl.'s ADD Opp'n at 24) and, as such, can be liable under Section 296(1). The Court disagrees. Plaintiff alleged that Reib, the Executive Director of ADD, was "responsible for the overall administrative operations of [ADD] *along with the Board of Directors*." (Am. Compl. ¶ 16 (emphasis added).) Although Reib may, in reality, have the power to do more than carry out the personnel decisions of others, such an inference cannot be drawn from this allegation as presently stated. Further, plaintiff describes Wanat only as "the Program Director and QMRP" for ADD, but provides no other information as to Wanat's job duties, responsibilities, or authority. Thus, neither Reib nor Wanat are subject to individual liability pursuant to Section 296(1).

Plaintiff also asserts that the individual ADD Defendants are subject to liability under the aider and abettor provision of the NYHRL, which makes it unlawful for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has made clear that "this language allow[s] a co-worker who 'actually participates in the conduct giving rise to the discrimination claim' to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)). Here, plaintiff has alleged that Rhodes and Noll "actually participate[d]" in the alleged retaliatory conduct and, thus, has adequately pled a claim against them pursuant to New York Executive Law § 296(6). *See Tomka*, 66 F.3d at 1317.

33

With respect to Wanat and Burgess, plaintiff has alleged only that she made complaints to them regarding residents' care but those complaints were ignored. Such complaints do not constitute protected activity under the NYHRL. Finally, other than the allegation that Reib is ADD's Executive Director, plaintiff has failed to allege that Reib actually participated in any conduct prohibited by the NYHRL.

Thus, plaintiff's NYHRL retaliation claims may be maintained against Rhodes and Noll, but her NYHRL retaliation claims against Reib, Burgess, and Wanat are dismissed.

**D.      *Plaintiff's Section 1983 Claims Against the ADD Defendants are Dismissed***

Plaintiff alleges that the ADD Defendants' conduct violated her First Amendment rights and Fourteenth Amendment equal protection and due process rights. The ADD Defendants assert that plaintiff's Section 1983 claims against them "must be dismissed because ADD and the individual ADD Defendants are not state actors." (ADD Defs.' Mem. at 13.) A cause of action under Section 1983 may lie against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see also Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States."). Thus, "[a] plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [ ] required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003); *see also R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 445 (S.D.N.Y. 2003) ("Perhaps most importantly, excluded from the reach of

Section 1983 is private conduct 'however discriminatory or wrongful.'") (quoting *Elmasri v. England*, 111 F. Supp. 2d 212, 217 (E.D.N.Y. 2000)).  "[P]rivate actors are not liable under section 1983 unless 'the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State.'"  *Omnipoint Commc'ns Inc. v. Comi*, 233 F. Supp. 2d 388, 393 (N.D.N.Y. 2002) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  The plaintiff "bears the burden of proof to establish whether a private actor has acted under color of state law."  *Id.*

The Supreme Court has articulated three tests to determine whether private conduct represents state action for the purposes of Section 1983: "(1) when there is a 'close nexus' between the private and state actors,[13] (2) when the private activity is a product of 'state compulsion,' or (3) when the private activity is a public function."  *Turturro v. Cont'l Airlines*, 334 F. Supp. 2d 383, 394 (S.D.N.Y. 2004).  "It is not enough, however, for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action."  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 258 (2d Cir. 2008) (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)).

Plaintiff appears to argue that the ADD Defendants' alleged conduct constituted state action under both the "close nexus" and "public function" tests.  (Pl.'s ADD Opp'n at 18.)  Under the close nexus test, the Court must determine whether there is a "sufficiently close nexus

---

[13]    The close nexus test has also been referred to as the "joint action" test, *see Faraldo v. Kessler*, 2008 WL 216608, at *4 (E.D.N.Y. Jan. 23, 2008),  and the "symbiotic relationships" test, *see Omnipoint Commc'ns Inc.*, 233 F. Supp. 2d at 395.

between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). "The intention of the close nexus requirement is to 'assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.'" *Turturro*, 334 F. Supp. 2d at 395 (quoting *Okunieff v. Rosenberg*, 996 F. Supp. 343, 349 (S.D.N.Y. 1998)). "The close nexus test can also be met if it involves a situation in which the State has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise.'" *Id.* at 396 (quoting *Okunieff*, 996 F. Supp. at 352). The close nexus test "usually examines the conduct of the state, not the conduct of the private entity." *Omnipoint Commc'ns Inc.*, 233 F. Supp. 2d at 395 (quoting *Blum*, 457 U.S. at 1004).

Plaintiff emphasizes that New York state regulations required ADD and its employees to investigate and "report allegations of abuse and neglect." (Pl.'s ADD Opp'n at 21.) Plaintiff asserts that "[t]he statutory regulation of the investigation of abuse does point to there being a close nexus between ADD, Inc. and the state . . . ." (*Id.*) The mere fact, however, that "the state has established substantive rights for patients in mental health facilities and procedures for protecting those rights," does not, without more, "amount to significant encouragement, willful participation, or state entwining" in the decision to terminate plaintiff's employment. *See Sybalski*, 546 F.3d at 258. A private entity does not become a state actor merely because it is subject to state regulation or receives state funding. *Ashby v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 351 F. Supp. 2d 27, 29 (E.D.N.Y. 2004). Here, plaintiff has failed to allege that any State Defendant (or other State employee) played any active role in the decision to

36

discipline and terminate plaintiff or that such decision could be attributed to the State itself.[14] Thus, she cannot meet the close nexus test.

"Under the public function test, 'the exercise by a private entity of powers traditionally *exclusively* reserved to the [s]tate' can constitute 'state action.'" *Sybalski*, 546 F.3d at 259 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)). "Accordingly, private actors must be delegated functions that were traditionally under the exclusive authority of the state for the public function test to be satisfied." *Id.* The Second Circuit has expressly held that "care of the mentally ill" is not a "function traditionally and exclusively reserved by the state." *Id.* at 260 (internal quotation marks omitted). Thus, the ADD Defendants' alleged conduct cannot be attributed to the state under the public function test.[15]

Because plaintiff has not met her burden of establishing that the ADD Defendants' alleged conduct constituted state action, her Section 1983 claims against them must be dismissed.

---

[14]     Plaintiff argues that "given the lack of factual development as to the actual interactions between the state and the private entity, it would be inappropriate to dismiss the complaint on the pleadings." (Pl.'s ADD Opp'n at 18.) The Court disagrees. *See Badiak v. Educ. & Assistance Corp.*, 2011 U.S. Dist. LEXIS 6526, at *18 (E.D.N.Y. Jan. 24, 2011) (granting motion to dismiss when plaintiff failed "to allege facts suggesting that the alleged misconduct was a result of state action" and denying motion to stay pending discovery; "The fact that the Plaintiff may uncover facts to support this cause of action does not cure the deficiency in the complaint.").

[15]     Plaintiff cites *Ruffler v. Phelps Memorial Hospital*, 453 F. Supp. 1062, 1070 (S.D.N.Y. 1978) for the proposition that "mental health care" is an "inherently 'public function'" and that a private entity's conduct in this area "constitute[s] state action." This reasoning, however, was expressly rejected by the lower court in *Sybalski v. Independent Group Home Living Program, Inc.*, 2007 WL 1202864, at *4 (E.D.N.Y. Apr. 24, 2007). That holding was affirmed, as discussed in the text above, by the Second Circuit. *Sybalski*, 546 F.3d at 259-60.

**E.      *Plaintiff's Section 1985 Claims are Dismissed***

Plaintiff alleges that the ADD Defendants "acting in concert with Defendants Huber,

Taylor, and Lopez, engaged in a conspiracy for the purpose of depriving Plaintiff of equal

protections and due process through the overt action of failing to investigate Plaintiff's

complaints of negligence and abuse of Northville house residents; and failing to address

conditions at the Northville residence as they impacted[ ] the health, safety and well[-]being of [ ]

mentally disabled persons . . . ."  (Am. Compl. ¶ 104.)

To state a cause of action under Section 1985(3), a plaintiff must allege: "(1) a conspiracy

(2) for the purpose of depriving a person or class of persons of the equal protection of the laws,

or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the

conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or

privilege of a citizen of the United States."  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

The conspiracy "need not be shown by proof of an explicit agreement but can be established by

showing that the parties have a tacit understanding to carry out the prohibited conduct." *Id.*

(quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995)) (internal quotation

marks omitted).  "Furthermore, the conspiracy must also be motivated by some racial or perhaps

otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.*

(quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993))

(internal quotation marks omitted).

The ADD Defendants argue that plaintiff's Section 1985 conspiracy claim must be

dismissed because "[n]o allegations exist showing how the ADD Defendants and the State

Defendants acted in concert with one another."  (ADD Defs.' Mem. at 19.)  The Court agrees –

the Amended Complaint does not contain a single allegation suggesting that the ADD

Defendants and the State Defendants ever communicated with each other, much less entered into

any type of agreement to discriminate against plaintiff because of her gender, retaliate against

her, or otherwise violate her constitutional rights.  Moreover, any claim that the ADD Defendants

conspired amongst themselves to discriminate or retaliate against plaintiff is barred by the

intracorporate conspiracy doctrine.  *See Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978)

("[T]here is no conspiracy [under section 1985] if the conspiratorial conduct challenged is

essentially a single act by a single corporation acting exclusively through its own . . . officers,

and employees, each acting within the scope of his employment.").

        Accordingly, plaintiff's Section 1985 conspiracy claim is dismissed.

## F.      *Plaintiff's Section 1986 Claim is Dismissed*

        It is well-established that a violation of Section 1986 is predicated on a violation of

Section 1985, since the former provides a remedy for the latter.  *See Talley v. Brentwood Union

Free Sch. Dist.*, 2009 WL 1797627, at *9 (E.D.N.Y. June 24, 2009) (citing *Brown v. City of

Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a

valid § 1985 claim . . . .")).  Because the Court has dismissed plaintiff's Section 1985 claim

against the ADD Defendants, her Section 1986 claim against them must fail as well.  *See Posr v.

Court Officer Shield No. 207*, 180 F.3d 409, 419 (2d Cir. 1999); *Sylla v. City of New York*, 2005

WL 3336460, at *7 (E.D.N.Y. Dec. 8, 2005) ("Where plaintiff fails to state a viable § 1985

claim, he cannot state a claim under § 1986.").

**G.**     ***Plaintiff's Intentional Infliction of Emotional Distress Claim is Dismissed***

Plaintiff alleges that "[t]he discriminatory treatment visited upon Plaintiff by Defendants was intentional and reckless; extreme and outrageous; and caused Plaintiff severe emotional distress."  (Am. Compl. ¶ 118.)  "The applicable statute of limitations for . . . intentional infliction of emotional distress under New York state law is one year."  *Young v. Suffolk County*, 705 F. Supp. 2d 183, 211 (E.D.N.Y. 2010) (citing N.Y. C.P.L.R. § 215(3)).  Plaintiff's employment was terminated on July 6, 2010, (Am. Compl. ¶ 67), but the present action was not commenced until January 27, 2012.  Thus, the ADD Defendants' motion to dismiss plaintiff's intentional infliction of emotional distress claim as time-barred is granted.

**H.**     ***Plaintiff's Request for Leave to Amend***

At the conclusion of her opposition papers, plaintiff requests leave to amend her pleadings as necessary to cure any deficiencies noted herein.  (Pl.'s ADD Opp'n at 25.)  Plaintiff will be permitted to submit a pre-motion conference letter, within thirty days of the date of this Order, which explicitly describes how she would amend her pleading to cure any deficiencies noted herein.

In addition, plaintiff's pre-motion conference letter may address whether she wishes to move to amend her pleading to formally assert a claim under New York Labor Law § 740 against the ADD Defendants.  "A court presented with a motion to dismiss must examine the complaint to determine whether the allegations provide a basis for relief under any possible theory."  *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 160 (E.D.N.Y. 1998) (citing *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 n.4 (2d Cir. 1980) ("Generally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the

legal theory or theories and statutory basis supporting the claim.")).  Having reviewed the Amended Complaint, it appears that plaintiff's allegation that she was terminated in retaliation for lodging complaints about Northville residents' care with her supervisors and outside state agencies – while not cognizable under Title VII or the NYHRL – could potentially state a cause of action under New York Labor Law § 740.  That statute prohibits employers from taking any "retaliatory personnel action" against an employee who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety . . . ."  N.Y. Lab. Law § 740(2)(a).

## *CONCLUSION*

For the reasons set forth above, the State Defendants' motion to dismiss is granted and all of plaintiff's claims asserted against the State Defendants are dismissed in their entirety.  The ADD Defendants' motion to dismiss is granted in part, and the following claims are dismissed: (1) Plaintiff's Title VII discrimination and retaliation claims against Reib, Rhodes, Wanat, Noll, and Burgess; (2) plaintiff's NYHRL gender discrimination claims against all ADD Defendants; (3) plaintiff's Title VII retaliation claims against ADD; (4) plaintiff's NYHRL retaliation claims against Reib, Wanat, Burgess; and (5) plaintiff's Section 1983, Section 1985, Section 1986 and intentional infliction of emotional distress claims against all ADD Defendants.  The ADD Defendants' motion to dismiss is denied as to the following claims: (1) plaintiff's Title VII gender discrimination claims against ADD; (2) plaintiff's NYHRL retaliation claims (to the extent they are based on retaliation for plaintiff's complaints of gender discrimination) against ADD, Rhodes, and Noll.

**SO ORDERED.**

Dated: Central Islip, New York
      February 20, 2013                                    _/s/_
                                                        Denis R. Hurley
                                                        Unites States District Judge