UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FAYE RUSSELL,

      Plaintiff,

  -against-

AID TO DEVELOPMENTALLY DISABLED, INC.;
DONALD REIB, Individually and as Executive
Director of AID TO DEVELOPMENTALLY
DISABLED, INC.; STACEY RHODE, Individually
and as Residential Manager of AID TO
DEVELOPMENTALLY DISABLED, INC.; PAULA
WANAT, Individually and as Program Director for
AID TO DEVELOPMENTALLY DISABLED, INC.;
CHRISTINA NOLL, Individually and as Human
Resources Manager, AID TO DEVELOPMENTALLY
DISABLED, INC.,

      Defendants.
------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**

12-cv-389 (LDH) (AKT)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

  Plaintiff Faye Russell brings the instant action against Defendants Donald Rieb, Stacey Rohde, Paula Wanat, and Christina Noll (the "Individual Defendants")[1] and Aid to Developmentally Disabled, Inc. ("ADD") (collectively, "Defendants"), alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"), and retaliation in violation of the NYSHRL.[2] Defendants move pursuant to Federal Rule of Civil Procedure 56 for summary judgment.

---

[1] The Individual Defendants' names are identified as in Defendants' submission. Their names were either misidentified or misspelled across Plaintiff's various submissions.

[2] On February 20, 2013, the Court dismissed Plaintiff's Title VII retaliation claims because Plaintiff failed to exhaust her administrative remedies. (Mem. and Order 29, Feb. 20, 2013, ECF No. 28.) Plaintiff's NYSHRL retaliation claim was dismissed to the extent that Plaintiff premised that claim on Plaintiff's complaints regarding the alleged abuse of the residents of the Northville Intermediate Care Facility ("ICF"), as such a claim was not cognizable under the NYSHRL. (*Id.* at 32.) Plaintiff's NYSHRL gender discrimination claims were dismissed for lack of subject matter jurisdiction pursuant to the NYSHRL's election of remedies doctrine. (*Id.* at 22-24.) The Court also dismissed Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986 and Plaintiff's intentional infliction of emotional distress claim. (*Id.* at 34-40.) Plaintiff subsequently sought the Court's leave to amend her complaint.

1

## UNDISPUTED FACTS[3]

### I. Background

ADD is a nonprofit organization licensed by the New York State Office for People with Developmental Disabilities ("OPWDD"). (*See* Pl.'s Opp'n 56.1 Statement ("Pl.'s 56.1") ¶ 38.) ADD operates Intermediate Care Facilities ("ICFs"), residential homes where residents under the OPWDD's care, known as "consumers," live in a homelike environment under the supervision of

---

(Mot. for Leave to File Second Am. Compl., ECF No. 35.) By Memorandum and Order dated September 16, 2014, the Court granted Plaintiff's motion to amend her complaint with regard to her NYSHRL gender discrimination claim, having found that Plaintiff had alleged sufficient facts to show that an exception to the election of remedies doctrine applied. (Mem. and Order 9-10, Sept. 16, 2014, ECF No. 41.)

[3] The foregoing facts are undisputed unless otherwise noted. Of particular significance here, facts that are not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Local Civil Rule 56.1(c) provides that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." It is well-settled in our district that responses such as "[d]eny knowledge or information sufficient to respond to the allegations in this paragraph" do not suffice to specifically controvert an opposing party's statement of fact. *See Walker v. City of New York*, 63 F. Supp. 3d 301, 306 n.4 (E.D.N.Y. 2014) ("Plaintiffs have 'den[ied] knowledge or information sufficient to be able to admit or deny the contentions' . . . . [T]his response is insufficient to refute a properly asserted fact by Defendants. . . . Merely stating that Plaintiffs have insufficient knowledge or information does not specially controvert a fact. . . . Accordingly, facts asserted by Defendants that were met with this reply are deemed admitted by this Court for purposes of these summary judgment motions."), *aff'd*, 621 F. App'x 74 (2d Cir. 2015); *accord. Aztar Corp. v. NY Entm't, LLC*, 15 F. Supp. 2d 252, 254 n.1 (E.D.N.Y. 1998); *Gibbs v. Metro. Transp. Auth.*, No. 13-cv-1583, 2014 WL 5842833, at *1 n.1 (E.D.N.Y. Nov. 12, 2014); *Litchhult v. USTRIVE2, Inc.*, No. 10-cv-3311, 2013 WL 3491076, at *2 n.1 (E.D.N.Y. July 10, 2013); *Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355, 363 (E.D.N.Y. 2009). Further, any statements of denial that are not supported by citations to evidence in the record are also deemed admitted. *Green v. Rochdale Village Social Servs., Inc.*, No. 15-cv-5824, 2016 WL 4148322, at *1 n.1 (E.D.NY. Aug. 4, 2016) ("Notwithstanding the basic principle that the facts must be construed in favor of the opponent to a summary judgment motion, Local Civil Rule 56.1 provides that unless a party responding to a statement of undisputed facts cites evidence as to those statements that she denies, the statements will be deemed admitted if they are supported by citations to evidence in the record."). At a number of points in her 56.1 Opposition and Counter-Statement, Plaintiff responds to Defendants' statements of fact as follows, or some variation thereof: "Plaintiff lacks information sufficient to admit or deny." (*See* Pl.'s Opp'n 56.1 Statement ("Pl.'s 56.1") ¶¶ 38, 50-61, 74, 84, 88-89, 97, 104-17, 119-23, 125-26, 133, 139-40, 147-48, 153-56, 163-64, 176-82, 185, 187, 190-94, 202-15, ECF 94.) At several points, Plaintiff states that she "cannot admit or deny as worded" or some variation thereof. (*Id.* ¶¶ 64, 83, 128, 131, 161-162, 184, 200, 228.) At other points, Plaintiff denies Defendants' statements of fact but does not provide any evidence to controvert those facts. (*See, e.g.*, Pl.'s 56.1 ¶¶ 1, 4, 13, 76-78, 87, 94-96, 98-103, 118, 124, 130, 141-143, 157-59, 174, 197, 199.) At still other points, Plaintiff refers the Court to Plaintiff's entire deposition transcript without providing direct citations. (*See id.* ¶¶ 79-81, 136-138, 151, 166.) Plaintiff denies paragraph 69 of Defendants' 56.1 statement as "Deny , [sic] reliance is placed on Plaintiff's testimony." (*Id.* ¶ 69.) Plaintiff responds to Defendants' paragraph 21 of Defendants' 56.1 statement as "Response: 21." (*Id.* ¶ 21.) Other responses are left completely blank. (*See, e.g., id.* ¶¶ 107, 135.) The foregoing examples are not exhaustive and provide only a sample of the various responses Plaintiff provides that are not supported by admissible evidence. Facts met with these insufficient responses are deemed undisputed.

ADD's staff members.  (*Id.* ¶¶ 55-56.)  During the relevant time period, Defendant Donald Rieb, who is male, held the position of Executive Director of ADD.  (*Id.* ¶ 50.)  Defendant Christina Noll, who is female, was ADD's Human Resources Manager.  (*Id.* ¶ 52.)  Defendant Paula Wanat, also female, was ADD's Program Director.  (*Id.* ¶ 53.)

The events relevant to this action took place at the Northville ICF, which housed eight consumers with developmental disabilities.  (*Id.* ¶ 58.)  Defendant Stacey Rohde, who is female, was the Residence Manager at the Northville ICF.  (*Id.* ¶ 57.)  Plaintiff's daughter, Batwonna Street, was also employed at the Northville ICF during the relevant time period and reported to Ms. Rohde.  (*Id.* ¶¶ 63-65.)  In January 2009, Plaintiff applied to work as a cook at the Northville ICF.  (*Id.* ¶¶ 62-63.)  Ms. Rohde and Ms. Noll interviewed Plaintiff for the position, and, with Ms. Rohde's support, Ms. Noll made Plaintiff an offer of employment.  (*Id.* ¶¶ 66, 68.)

Plaintiff began working as a full-time cook at the Northville ICF on February 2, 2009, reporting directly to Ms. Rohde.  (*Id.* ¶¶ 66, 70, 75.)  Approximately nineteen other individuals worked at the Northville ICF as supervisors and "Direct Support Professionals" ("DSPs"), but Plaintiff was the only full-time cook.  (*Id.* ¶ 72.)  In her role, Plaintiff was responsible for preparing meals according to each consumer's special dietary plan, grocery shopping, and maintaining the kitchen.  (*Id.* ¶ 71.)  Plaintiff worked a schedule of Monday to Friday, 12:00 p.m. until 8:00 p.m.  (*Id.* ¶ 73.)  This schedule was set by the OPWDD and could not be permissibly modified by any ADD employee.  (*Id.* ¶ 74.)

## II. Plaintiff's Scheduling and Attendance Issues

In May 2009, Plaintiff became responsible, unexpectedly, for the care of her three young grandchildren.  (*Id.* ¶ 82.)  Because of the demands of childcare, Plaintiff was unable to work the 12:00 p.m. to 8:00 p.m. schedule.  (*Id.* ¶ 83.)  Ms. Rohde offered to accommodate Plaintiff with a

3

flexible schedule on a temporary basis. (*Id.* ¶ 85.) There is no dispute that Plaintiff understood that the flexible schedule was a temporary arrangement. (*Id.* ¶ 86.) Ms. Rohde told Plaintiff to advise her in advance of Plaintiff's expected arrival and departure times. (*Id.* ¶ 87.) Ms. Rohde did not consult her supervisor, Ms. Wanat, or the Human Resources manager, Ms. Noll, before agreeing to this arrangement with Plaintiff. (*Id.* ¶ 88.)

On June 4, 2009, Plaintiff was scheduled to attend a mandatory in-service training. (*Id.* ¶ 90.) Defendants contend that Plaintiff did not attend that session or inform Ms. Noll of her absence in advance. (*Id.* ¶¶ 90-91.) On June 8, 2009, Plaintiff was scheduled to attend another mandatory in-service training. (*Id.* ¶ 92.) Defendants state that Plaintiff again missed the session and did not inform Ms. Noll of her absence. (*Id.* ¶ 93.) Plaintiff denies that she missed either training session. (*Id.* ¶¶ 90-93.) In any event, in light of these alleged absences, Ms. Noll recommended to Ms. Rohde that Plaintiff receive verbal counseling. (*Id.* ¶ 94.) Plaintiff subsequently completed an in-service course regarding medication administration. (Defs.' Reply 56.1 Statement ("Defs.' Reply 56.1") ¶ 22, ECF 97.)

In addition to Plaintiff's alleged absences, Plaintiff regularly arrived late to work or left before her scheduled shift ended. (Pl.'s 56.1 ¶¶ 77, 79.) On August 17, 2009, Ms. Rohde spoke with Plaintiff about her hours, including the fact that Plaintiff was taking too many breaks, not returning to work, or staying home from work without calling in first. (*Id.* at 102; Defs.' Ex. 36, ECF 89-21.) Ms. Rohde told Plaintiff that she was willing to work with Plaintiff given her situation, but that Plaintiff needed to personally contact Ms. Rohde if she was unable to come to work. (Pl.'s 56.1 ¶ 102; Defs.' Ex. 36.)

Sometime before January 20, 2010, Ms. Rohde advised Ms. Noll and Ms. Wanat that Plaintiff was not adhering to the regular cook schedule and explained Plaintiff's family

4

obligations. (Pl.'s 56.1 ¶¶ 103, 112.) Ms. Wanat informed Ms. Rohde that Plaintiff's schedule as a cook was set by the OPWDD and therefore could not be modified. (*Id.* ¶ 115.)

Ms. Wanat then discussed Plaintiff's attendance issues with Ms. Noll. (*Id.* ¶ 116.) Ms. Wanat informed Ms. Noll that she had reviewed Plaintiff's time records and discovered a "significant" discrepancy between the mandated schedule for cooks and the hours that Plaintiff was actually working. (*Id.*) Specifically, Ms. Noll had discovered that, between February 2009 and January 2010, Plaintiff had failed to come to work on forty-four occasions and was late for work on eighty-five occasions. (*Id.* ¶ 108.) Ms. Rohde confirmed that the time records were accurate. (*Id.* ¶¶ 109-10.) Ms. Noll observed that Plaintiff's attendance record also violated ADD's Attendance and Punctuality Policy, which was included in ADD's employee handbook.[4] (*Id.* ¶ 118.) Ms. Noll and Ms. Wanat decided to address Plaintiff's scheduling problems and issue a "Final Written Warning." (*Id.* ¶ 117.) Ms. Noll also consulted Mr. Rieb, who agreed with that course of action. (*Id.* ¶ 120-21.)

On January 20 2010, Ms. Noll, Ms. Rohde, and Ms. Wanat met with Plaintiff to discuss her failure to adhere to the OPWDD-mandated schedule for cooks. (*Id.* ¶ 126.) Ms. Noll and Ms. Wanat reiterated that Plaintiff was required to work from 12:00 p.m. until 8:00 p.m., because the schedule was set by the OPWDD. (*Id.* ¶¶ 129-30.) In addition, Ms. Noll issued Plaintiff a "Final Written Warning" for poor attendance. (*Id.* ¶ 127.) Ms. Noll warned Plaintiff that she would be terminated if her lateness and absenteeism continued. (*Id.* ¶ 131.) Plaintiff did not complain of discrimination or differential treatment based on gender during that meeting. (*Id.* ¶ 134.) On January 21, 2010, at Plaintiff's request, Ms. Rohde submitted a "Status Change" form requesting to change Plaintiff's schedule from 12:00 p.m. to 8:00 p.m. to 10:00 a.m. to 6:00

---

[4] Shortly after her hire, Plaintiff signed a "handbook acknowledgment statement," which confirmed that she had received and read the handbook and agreed to conform to the rules therein. (Pl.'s 56.1 ¶ 47.)

p.m. (*Id.* ¶ 141.) Ms. Wanat and Ms. Noll denied the request because, again, the hours for cooks were set by the OPWDD and could not be modified. (*Id.*)

In April 2010, Plaintiff requested a temporary change in her schedule from full-time to part-time to cover shifts for James Phillips, a DSP who was out on a medical leave of absence. (*Id.* ¶ 142.) Ms. Wanat and Ms. Noll approved the request. (*Id.* ¶ 143.) During the period in which Plaintiff covered Mr. Phillips' shifts, her assigned schedule was 7:00 a.m. to 12:00 p.m. on Fridays, 9:00 a.m. to 9:00 p.m. on Saturdays, and 9:00 a.m. to 3:00 p.m. on Sundays. (*Id.* ¶ 145.)

On May 12, 2010, Mr. Phillips returned from his leave of absence. (*Id.* ¶ 146.) Upon Mr. Phillips' return, Ms. Rohde conferred with Ms. Noll about the options available to Plaintiff: she could resume her previous position as cook, Monday to Friday from 12:00 p.m. until 8:00 p.m., or she could apply for a vacant part-time overnight position in the Northville ICF, working Fridays and Saturdays. (*Id.* ¶ 147.) By letter dated May 12, 2010, Ms. Noll advised Plaintiff of Mr. Phillips' return and advised Plaintiff of these options. (*Id.* ¶ 149.) Plaintiff accepted the part-time overnight position as of May 21, 2010. (*Id.* ¶ 150.)

### III. Staff Complaints Concerning Plaintiff and Plaintiff's Suspension and Termination

In mid-June 2010, Ms. Rivero, the Assistant Residence Manager at the Northville ICF, advised Ms. Rohde that other staff members were upset by insensitive comments that Plaintiff allegedly made regarding the death of one of the Northville ICF residents. (*Id.* ¶ 153.) Ms. Rohde reported the situation to Ms. Wanat, who instructed Ms. Rohde to meet with the staff members individually to obtain written statements from them. (*Id.* ¶ 154.) Ms. Rohde interviewed three staff members, one female and two males, and prepared typewritten statements for each employee summarizing the information they provided. (*Id.* ¶ 155.) The staff members

6

declined to sign the statements, advising Ms. Rohde that they feared retaliation from Plaintiff. (*Id.* ¶ 156.)

Sometime between 8:00 a.m. and 9:00 a.m. on the morning of July 2, 2010, Ms. Wanat advised Ms. Noll of the aforementioned complaints about Plaintiff. (*Id.* ¶ 157.) Ms. Noll attempted to reach Plaintiff by telephone at work to ask her about the allegations. (*Id.* ¶ 163.) Although Plaintiff was scheduled to work from 7:00 a.m. to 12:00 p.m. that day, the staff member who answered the telephone informed Ms. Noll that Plaintiff was not at work. (*Id.* ¶ 164.) Ms. Noll then called Plaintiff and scheduled a time for the two to discuss the matter on July 6, 2010, at 9:00 a.m., and informed Plaintiff that she was suspended until the discussion. (*Id.* ¶¶ 167-68.) Plaintiff made no mention of alleged discrimination or differential treatment based on gender during the July 2, 2010 conversation. (*Id.* ¶ 172.) Defendants maintain that Plaintiff understood, based on that conversation, that Plaintiff was to meet with Ms. Noll in person on July 6, 2010. (*Id.* ¶¶ 167-173.) Plaintiff contends that she believed that she was supposed to call Ms. Noll. ( Defs.' Reply 56.1 ¶ 52.) However, at her deposition, Plaintiff testified that Ms. Noll had "wanted to sit down, I guess to discuss whatever it [was] that she had to talk to me about." (Pl.'s Ex. P at 190:12-14, ECF 95-2.) Plaintiff did not appear for the July 6, 2010 9:00 a.m. meeting with Ms. Noll. (Pl.'s 56.1 ¶ 184.)

Ms. Noll subsequently reviewed Plaintiff's performance history, which included: (1) Plaintiff's failure to report to work on July 2, 2010, and failing to report her absence; (2) the "Final Written Warning" issued to Plaintiff for her prior poor attendance; and (3) her violations of agency policy, including spreading rumors, falsehoods, and gossip. (*Id.* ¶ 185.) In light of this record, Ms. Noll decided to terminate Plaintiff's employment. (*Id.* ¶ 186.) Ms. Noll spoke

with Mr. Rieb later that morning and advised him of her decision. (*Id.* ¶ 187.) Mr. Rieb agreed that termination was the proper course. (*Id.* ¶ 188.)

## IV. Plaintiff's Informal, Administrative, and Federal Complaints

Plaintiff contends that she complained to others at ADD about discrimination and/or differential treatment. Plaintiff, however, could not recall when any of the complaints were made. (*Id.* ¶ 228.)[5] On July 29, 2010, ADD was notified that Plaintiff had contacted the County of Suffolk Human Rights Commission, alleging unlawful discrimination in employment based on sex. (*Id.* ¶ 2.) Plaintiff had alleged that male employees had been absent more frequently than Plaintiff but had not been reprimanded or terminated, whereas female employees were reprimanded or fired for small violations. (*Id.* ¶ 3.) On November 4, 2010, Plaintiff filed an administrative complaint with the New York State Division of Human Rights, which was cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 5.) In that submission, Plaintiff similarly alleged that she had been subjected to unlawful discrimination in employment on the basis of sex. (*Id.*) Plaintiff later amended her administrative complaint to include an allegation of retaliation based on her complaints regarding the treatment of patients with disabilities. (*Id.* ¶ 16.) The EEOC issued a Dismissal and Notice of Right to Sue letter on October 28, 2011. (*Id.* ¶ 20.) Plaintiff filed the instant federal complaint on January 27, 2012. (*Id.* ¶ 21.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material

---

[5] It is also undisputed that Plaintiff did not complain to Mr. Rieb regarding alleged differential treatment, consumer abuse, or retaliation during her employment with ADD. (*Id.* ¶ 226.)

8

fact exists when the evidence as to a fact that might affect the suit's outcome is such that a reasonable jury could find in favor of the non-movant at trial. *Anderson*, 477 U.S. at 248. At summary judgment, the movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movants meet that burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *see also Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to view all such facts in the light most favorable to the non-movant, drawing all reasonable inferences in her favor. *Anderson*, 477 U.S. at 255. Still, to survive summary judgment, a non-movant must present concrete evidence and may not rely on mere conclusory or speculative claims or denials. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial.").

## DISCUSSION

### I. Plaintiff's Gender Discrimination Claims Under Title VII and the NYSHRL

Gender discrimination claims under Title VII and the NYSHRL are analyzed under the burden-shifting test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209-10 (E.D.N.Y. 2014) (applying *McDonnell Douglas* burden-shifting test to gender and race discrimination claims under Title VII and NYSHRL). At the first step of this analysis, a plaintiff bears the burden of establishing a prima facie case of employment discrimination by showing that: (1) she belongs to a protected class; (2) she was qualified for the position she held; and (3) she suffered

an adverse employment action that (4) occurred under circumstances giving rise to an inference of discrimination. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). If the plaintiff makes out a prima facie case, the burden of production shifts to the defendants, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* at 498-99. If the defendants articulate such a reason, the presumption of discrimination falls away, and the plaintiff must prove that the reason offered by the defendants was pretextual. *Id.* at 499. In other words, to survive summary judgment, a plaintiff must offer evidence from which a reasonable jury could conclude that an adverse action taken by the defendants was motivated by discrimination. *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 187 (E.D.N.Y. 2013) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013)).

There is no dispute that Plaintiff is a member of a protected class or that she was subjected to an adverse employment action. Plaintiff's discrimination claims fail, however, because she has failed to adduce facts that give rise to an inference of discrimination. Plaintiff fails, for example, to provide direct evidence of discrimination, such as inflammatory or discriminatory comments regarding Plaintiff's gender. *See, e.g.*, *Delia v. Donahoe*, 862 F. Supp. 2d 196, 219-20 (E.D.N.Y. 2012) (granting defendant's motion for summary judgment on discrimination claim where Plaintiff "ha[d] not pointed to any direct evidence of discrimination, such as disparaging comments"); *accord Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984).

Plaintiff has similarly failed to provide any indirect evidence of discrimination. As a threshold matter, it is a well-settled, albeit not dispositive, principle that where the alleged discriminator is a member of the same protected class as Plaintiff, an inference against discrimination exists and claims of discrimination become less plausible. *Meyer v. State of New*

*York Office of Mental Health*, 174 F. Supp. 3d 673, 687 (E.D.N.Y. 2016), *aff'd sub nom. Meyer v. New York State Office of Mental Health*, 679 F. App'x 89 (2d Cir. 2017). Here, like Plaintiff, Ms. Wanat, Ms. Rohde, and Ms. Noll, who were primarily responsible for handling Plaintiff's discipline and ultimate termination, are all female. This fact raises an inference against gender discrimination.

Moreover, Plaintiff has not identified any comparators whose treatment by Defendants would support an inference of gender discrimination. Plaintiff charges that she was disciplined for conduct that went without punishment when committed by her male co-workers. (Pl.'s Mem. in Opp. 9, 11, ECF No. 104.) Plaintiff also maintains that Defendants gave males preferential treatment, contending, among other things, that Ms. Rohde "played favorites" with the males working at the Northville ICF and excused their failure to perform their job duties. (Defs.' Reply 56.1 ¶ 61.) When relying on evidence of disparate treatment to raise an inference of discrimination, a plaintiff must show that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). In the context of allegations of disparately administered discipline, a plaintiff is only similarly situated to individuals who were subject to the same workplace standards and engaged in conduct of comparable seriousness. *See Graham*, 230 F.3d at 40 ("[A] plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards. . . . [T]he standard . . . requires Plaintiff to show that similarly situated employees who went undisciplined engaged in comparable conduct.").

Here, the undisputed facts show that male employees at the Northville ICF were disciplined, and in some cases terminated, for engaging in conduct similar to, and at times less

11

egregious than, Plaintiff's. (Pl.'s 56.1 ¶¶ 200, 202.) For example, Ms. Rohde counseled C.H., a male DSP, on March 12, 2009, regarding various job performance issues, including his hours and attendance. (*Id.* ¶ 203.) C.H. was terminated on or about March 24, 2009, for excessive absenteeism and lateness, loafing on the job, and not completing work. (*Id.* ¶ 204.) On May 4, 2009, L.B., another male DSP at the Northville ICF, received a written warning for failure to report to a mandatory in-service training. (*Id.* ¶ 206.) On May 5 and May 6, 2009, L.B. failed to comply with ADD's procedures for notifying supervisory staff of latenesses or absences. (*Id.* ¶ 207.) On May 11, 2009, Ms. Noll terminated L.B. for his "no call no show" attendance issues. (*Id.* ¶ 208.) On September 1, 2009, Ms. Rohde counseled M.L., another male DSP at the Northville ICF, regarding what Ms. Rohde considered to be unacceptable documentation of consumer records. (*Id.* ¶ 212.) Similarly, on October 21, 2009, Ms. Rohde counseled male employee Q.M. for his failure to complete the required data entries for consumers under his care. (*Id.* ¶ 215.) On August 12, 2010, P.B., a male DSP, was counseled regarding incomplete data entries regarding a consumer under his care. (*Id.* ¶ 211.) On April 15, 2010, P.B. was counseled regarding a missing entry in his time records. (*Id.* ¶ 210.)

In other words, the record establishes that male employees were reprimanded, and in some cases terminated, for engaging in conduct similar to that of Plaintiff. Further, there is no evidence before the Court that would indicate that those who were reprimanded for absences or lateness had attendance records even approaching Plaintiff's record of an astonishing forty-four absences and eighty-five late arrivals in less than a year's time. As such, the Court finds that Plaintiff has not raised an inference of discrimination, and therefore fails to make out a prima facie case of discrimination under both Title VII and the NYSHRL.

Further, even if Plaintiff could make out a prima facie case of gender discrimination, her claim still fails under the second and third prongs of the *McDonnell Douglas* framework. As to the second prong, Plaintiff was subjected to discipline for her violations of the company policies outlined in ADD's employee handbook, particularly the rules regarding lateness and absenteeism.[6] Indeed, it is undisputed that, between February 2009 and January 2010, Plaintiff failed to come to work on forty-four occasions and was late for work on eighty-five occasions. (*Id.* ¶ 108.) The application of neutral company policies is "by definition" a legitimate, non-discriminatory reason for a particular action. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 51 (2003); *see also Sethi v. Narod*, 12 F. Supp. 3d 505, 547-548 (E.D.N.Y. 2014) (allotting plaintiff paid vacation time in a manner consistent with a neutrally applied company policy was a legitimate, non-discriminatory reason for denying plaintiff's request for additional vacation days).

In the face of Defendants' patently non-discriminatory reasons for terminating Plaintiff's employment, Plaintiff has offered no evidence to suggest that the enforcement of the policies at issue here was anything other than neutral. Thus, these claims also fail at the third stage of the *McDonnell* framework. *See Raytheon*, 540 U.S. at 51-52 (plaintiff could not survive summary

---

[6] Plaintiff submitted an affidavit and other additional exhibits to this Court on April 3, 2017, well past the deadline to submit her 56.1 statement and exhibits and without this Court's leave to do so. Accordingly, the Court struck the affidavit and exhibits as out of time. The Court further notes that Plaintiff failed to properly authenticate any of her exhibits. However, even considering all of the belatedly submitted exhibits and crediting Plaintiff's testimony in her affidavit that she was unaware of her set schedule and that she was not scheduled to work on the morning of July 2, 2010, Plaintiff's claims still fail. This subjective and self-serving conclusion is insufficient to raise a triable issue of fact. *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation [to survive summary judgment]."). Further, even if Plaintiff did properly dispute the accuracy of her disciplinary and time records, that alone would not carry her burden. *See Wade v. N.Y. City Dep't of Educ.*, No. 11-cv-5278, 2014 WL 941754, at *9 (S.D.N.Y. Mar. 10, 2014) ("That Plaintiff disputes the accuracy of the nondiscriminatory justification for her termination is not enough to establish pretext."). An employer may terminate an employee for any reason or no reason at all, as long as it is not discriminatory. *Baldwin v. North Shore Univ. Hosp.*, 470 F. Supp. 2d 225, 233 (E.D.N.Y. 2007) ("However, there is the general rule that an employer can suspend or discharge an employee at will for any reason, wise or unwise, fair or unfair, as long as this decision is not based on discrimination.").

judgment absent evidence that company's policy against rehiring employees that had violated company rules was a pretext for discrimination); *Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 313-14 (E.D.N.Y. 2014) (plaintiff failed to establish prima facie case of discrimination where defendant articulated non-discriminatory reason for termination, including complaints from customers, but plaintiff did not provide evidence of pretext). Defendants' motion for summary judgment as to Plaintiff's gender discrimination claims is granted.

## II. Plaintiff's NYSHRL Retaliation Claims

Plaintiff also claims that Defendants retaliated against her for her complaints of discriminatory conduct.[7] Claims of retaliation under the NYSHRL are also examined under the *McDonnell Douglas* burden-shifting standard. *Summa*, 708 F.3d at 125 (applying *McDonnell Douglas* test to retaliation claims under Title VII and NYSHRL). At the first step of this test, a plaintiff must establish a prima facie case of retaliation. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). To establish a prima facie case of retaliation, a plaintiff must show: (1) participation in a protected activity; (2) defendant's knowledge of the same activity; and (3) an adverse employment action that is (4) causally connected to the protected activity. *Weber v. City of New York*, 973 F. Supp. 2d 227, 266 (E.D.N.Y. 2013).

Here, Plaintiff cannot make out a prima facie case of retaliation under the NYSHRL because she has failed to establish a causal connection between any protected activity and an adverse employment action. A plaintiff may establish a causal connection either through direct evidence of retaliatory animus or indirectly through circumstantial evidence. *Butler v. Potter*,

---

[7] Plaintiff has provided a number of other bases for her termination. During her deposition, Plaintiff testified at least six times that she was terminated in retaliation for her complaints about consumer abuse. (Pl.'s 56.1 ¶ 196.) At other points in Plaintiff's deposition, she testified that she did not know why ADD terminated her. (*Id.* ¶ 199.) Plaintiff also advised the New York State Department of Labor that she was terminated for reporting bed bugs at the Northville ICF. (*Id.* ¶ 197.) These are not legally actionable bases for a retaliation claim.

14

No. 06-cv-3828, 2009 WL 804722, at *11 (E.D.N.Y. Mar. 26, 2009). The record is utterly devoid of any direct evidence of retaliatory animus. For example, there is no evidence that Defendants threatened Plaintiff or made comments that would indicate that Defendants had any retaliatory motive. *See Douglas v. Hip Centralized Laboratory Services, Inc.*, No. 03-cv-205, 2005 WL 1074959, at *3 (E.D.N.Y. Apr. 29, 2005) (collecting cases and finding no direct evidence of retaliatory animus where plaintiff did not adduce evidence of retaliatory statements); *cf. Mandell*, 316 F.3d at 383 (direct evidence of retaliatory animus found where termination letter stated that plaintiff was being moved for having "branded the entire department as racists and anti-semites"); *Riisna v. Am. Broad. Cos., Inc.*, 219 F. Supp. 2d 568, 571 (S.D.N.Y. 2002) (finding direct evidence of retaliatory animus where email stated that plaintiff was being removed from project because she had filed an EEOC charge against the company).

Where there is no direct evidence of retaliatory animus, proof of causation may be shown indirectly by demonstrating that the protected activity was followed closely by a retaliatory action. *Id.*; *Frazier v. City of N.Y. Dep't of Correction*, No. 14-cv-1224, 2016 WL 4444775, at *4 (E.D.N.Y. Aug. 23, 2016) (citing *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 307 F. App'x 596, 599 (2d Cir. 2009)). The Second Circuit has not defined a "bright line" setting the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship. *Frazier*, 2016 WL 4444775, at *4 (citing *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)). However, district courts in this Circuit have "consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Id.* (collecting cases); *see also Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases dismissing retaliation claims where there was a three- to four-month gap

between protected activity and adverse employment action); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").

Here, Plaintiff contends that she complained to Defendants about the differential treatment of males, but it is undisputed that she cannot remember when she made these complaints. (Pl.'s 56.1 ¶ 228.) In addition, Plaintiff's EEOC charge and federal complaint were both filed after she was terminated. On this record, Plaintiff cannot rely on temporal proximity to raise an inference of retaliatory animus, and she thereby fails to make out a prima facie case of retaliation. Accordingly, her NYSHRL retaliation claim fails, and summary judgment is therefore warranted as to this claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety, and Plaintiff's claims are dismissed, with prejudice. The Clerk of the Court is respectfully requested to enter judgment accordingly and close the case.

SO ORDERED:

 /s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
     September 30, 2017

16